IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

NATHANIEL L. ALLEN,           §
                              §
VS.                           §    CIVIL ACTION NO.4:12-CV-414-Y
                              §
                              §
MICHAEL T. SEILER, et al.     §

OPINION and ORDER OF DISMISSAL
UNDER 28 U.S.C. § 1915(e)(2)(B)(i) and (ii)

This case is before the Court for review of pro-se inmate and
plaintiff Nathaniel L. Allen's case under the screening provision
of 28 U.S.C. § 1915(e)(2)(B). Allen is presently housed in the Fort
Worth Transitional Center pursuant to an order of civil commitment
to the Texas Office of Violent Sex Offender Management (OVSOM).
(Complaint at 2; Exhibits B (8-9) and C(2-9).) As such, Allen is not
considered a "prisoner" within 28 U.S.C. § 1915(h) and is thus not
subject to the case-screening procedures under 28 U.S.C. § 1915A.[1]
As Allen proceeds in forma pauperis, he is still subject to the
review provisions of 28 U.S.C. § 1915(e)(2)(B).

A complaint filed in forma pauperis that lacks an arguable
basis in law should be dismissed under 28 U.S.C. § 1915.[2] Under 28

_____

[1]*See Jackson v. Johnson,* 475 F.3d 261, 266 (5th Cir. 2007)(citing with
approval *Troville v. Venz,* 303 F.3d 1256, 1260 (11th Cir. 2002)(holding that
individual civilly detained as a sexually violent predator is not a § 1915(h)
"prisoner" because the PLRA "appl[ies] only to persons incarcerated as punishment
for a criminal conviction")); *see also Merryfield v. Jordan,* 584 F.3d 923, 927
(10th Cir. 2009)("1915(h) does not apply to those civilly committed under
Kansas's sexually violent predator act)(citing *Michau v. Charleston County,* 434
F.3d 725, 727 (4th Cir. 2006)(same–South Carolina Sexual Violent Predator Act)),
*Troville,* 303 F.3d at 1260, and *Page v. Torrey,* 201 F.3d 1136, 1140 (9th Cir.
2000)(same--California Sexually Violent Predators Act)).

[2]*Neitzke v. Williams*, 490 U.S. 319,328 (1989). Section 28 U.S.C. § 1915(e)
*requires* dismissal not only when an allegation of poverty is untrue or the action
is frivolous or malicious, but also when "the action . . . . fails to state a

U.S.C. § 1915(e)(2)(B), a district court retains broad discretion in determining at any time whether an in-forma-pauperis claim should be dismissed.[3] A district court is not required to await a responsive pleading to conduct its § 1915 inquiry.[4] Rather, § 1915 gives judges the power to "dismiss a claim based on an indisputably meritless legal theory."[5] After review of the complaint under these standards, the Court concludes that Allen's claims must be dismissed.

In the complaint, Allen has named as defendants Michael T. Seiler, judge, 435th Judicial District Court of Montgomery County, Texas; Greg W. Abbott, attorney general, State of Texas; Allison Taylor, executive director, OVSOM; Diana Lemon, case manager, OVSOM; Clemmy Washington, case manager, OVSOM. (Compl. at 2.) In May 2011, Allen was civilly committed as a sexually violent predator (SVP)[6] in case number 10-10-11906-CV in the 435th District Court, Montgomery County, Texas. (Compl. at 4; Exhibit A.) Allen includes particular claims of violations of his constitutional rights during

---

claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915(e)(2)(A) and (B)(West 2006).

[3]*See* 28 U.S.C.A. § 1915(e)(2)(West 2006); *Adepegba v. Hammons,* 103 F.3d 383, 388 (5th Cir. 1996); *see also Wesson v. Oglesby,* 910 F.2d 278, 281 (5th Cir. 1990)(discussing authority to dismiss at any time under prior § 1915(d)).

[4]*See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995).

[5]*Id., citing Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[6]The provisions of Texas law for civil commitment of sexually violent predators are within Texas Health and Safety Code § 841.001 et seq.

this civil commitment proceeding, which will be addressed here in detail.

After completion of a criminal prison sentence, Allen was transferred to a facility in El Paso, Texas, where he was subject to the control and direction of OVSOM. (Compl. ¶ 13.) While at the El Paso facility from November 2011 until March 2012, Allen was subject to rules and conditions of commitment and was directed by case manager Lemon. (Compl. ¶¶ 14-16.) In March 2012, Allen was transferred to the Tarrant County Transitional Center in Tarrant County, Texas, and was then directed by case manager Clemmy Washington. (Compl. ¶ 17.) Allen raises similar complaints of his conditions of commitment at each of these facilities, and these claims will be addressed in detail below.

Allen has named each of the defendants in his official capacity as an agent of the State of Texas. Although the Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983, the Supreme Court created an exception to such immunity in *Ex parte Young,* 209 U.S. 123 (1908):

> The Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law. *See American Bank & Trust Co. Of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993). To meet the *Ex parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tennessee Dep't of Employment Sec.,* 976 F.2d

966, 968 (5th Cir. 1992).[7]

Allen seeks only declaratory and injunctive relief in nature and prospective in effect. Thus, his claims against the defendants, even though each is alleged to be acting in an official capacity, are not barred by Eleventh Amendment immunity.

*Dismissal of Some Defendants*

The Court notes that a claim of liability for violation of rights under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.[8] Allen names in his complaint Attorney General Greg W. Abbott, and OVSOM Executive Director Allison Taylor. Abbott is named as "the person legally responsible for the overall operation of the judicial system in the state of Texas." (Compl. ¶ 5.) Taylor is named as the person "legally responsible of the overall operation of OVSOM and for the welfare of all civil commitment residents committed under Texas Health and Safety Code 841." (Compl. ¶ 6.) Allen makes no other allegation of any specific conduct of these persons taken against him.  Thus, Allen appears to have named Abbott and Taylor purely because of each defendant's supervisory capacity as the top administrator of different state departments. But, § 1983 does not authorize supervisory liability based only on *respondeat superior*

---

[7]*Aguilar v. Texas Department of Criminal Justice, et al.,* 160 F.3d 1052, 1054 (5th Cir. 1998), *cert. den'd*, 528 U.S. 851 (1999).

[8]*See  Murphy v.  Kellar,* 950 F.2d 290, 292 (5th Cir. 1992);  *Jacquez v. Procunier,* 801 F.2d 789, 793 (5th Cir. 1986); *Wanger v. Bonner,* 621 F.2d 675, 679 (5th Cir. 1980); *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir. 1979).

or any theory of vicarious liability.[9] Thus, the Court concludes that Allen's claims against Greg Abbott and Allison Taylor must be dismissed.

*Claims arising from the Civil Commitment Proceeding*

Allen complains that during the civil commitment trial Judge Seiler ordered him to be examined by a mental-health expert, and that examination constituted a direct violation of his right "to be secure in his person" under the Fourth Amendment. (Compl. ¶ 23.) Allen also complains that the jury was improperly instructed to consider whether he would "likely" engage in a sexually violent act, which Allen contends altered the burden of proof and resulted in his not receiving a fair trial--a violation of his rights under the Sixth Amendment. (Compl. ¶ 24.) Furthermore, Allen claims that the use of evidence during the civil-commitment trial of his prior entry into plea agreements to other convictions amounted to the "State['s] creating a law impairing the obligation of contract implied in a plea agreement," by changing the plea agreements to a point that he would not have entered into them--a violation of his rights under the Fourteenth Amendment. (Compl. ¶ 25.)

All of Allen's claims of constitutional violations arising during the civil-commitment trial itself are not cognizable under 42 U.S.C. § 1983. Plaintiff seeks from this Court declaratory and

---

[9]*See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999)("Only the direct acts of omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983"); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987)("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability")(citations omitted).

injunctive relief from the actions taken during the civil-commitment proceeding against him in the 435th Judicial District Court. In *Heck v. Humphrey,*[10] the Supreme Court held that a claim that, in effect, attacks the constitutionality of a conviction or imprisonment is not cognizable under 42 U.S.C. § 1983 and does not accrue until that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[11] The *Heck* opinion involved a bar to claims for monetary damages, but a dismissal of a claim for injunctive and/or declaratory relief may also be made pursuant to *Heck.*[12] Even though the sexually-violent-predator (SVP) commitment order complained of by Allen is civil in nature, rather than criminal,[13] federal courts that have considered § 1983 claims challenging such proceedings have ruled that *Heck v. Humphrey* applies to bar such claims.[14]

---

[10]512 U.S. 477, 486–87 (1994).

[11]*Heck,* 512 U.S. at 486–87; *see also Wells v. Bonner,* 45 F.3d 90, 94 (5th Cir. 1995).

[12]*See Reger v. Walker,* 312 Fed. Appx. 624, 625 (5th Cir. 2009)(noting that claims, "whether for damages, declaratory judgment, or injunctive relief" are not cognizable in a § 1983 action because they imply the invalidity of conviction), *cert. dismissed,* 130 S. Ct. 226 (2009); *see also Clarke v. Stadler,* 154 F.3d 186, 190–91 (5th Cir. 1998)(en banc)(holding that a claim for prospective injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey*), *cert. den'd,* 525 U.S. 1151 (1999).

[13]*See Jackson,* 475 F.3d at 266.

[14]*See e.g., Turner v. Johnson,* 466 Fed. Appx. 214 (4th Cir. 2012); *Thomas v. Schmitt,* 380 Fed. Appx. 549, 550 (7th Cir. June 16, 2010)(Thomas may not sue for damages under § 1983 for his civil commitment as a sexually violent predator "unless and until his commitment has been invalidated"); *Banda v. N.J. Special Treatment Unit Annex,* 164 Fed. Appx. 286, 287 (3rd Cir.)(*Heck* bars civilly

6

Plaintiff's request to have this Court declare that constitutional violations took place during his civil commitment trial and proceedings, if successful, necessarily would imply the invalidity of his present commitment. Thus, such claims are not cognizable under § 1983 unless Allen has satisfied the conditions set by *Heck*. In the similar context of a federal prisoner's challenge to civil commitment proceedings under 18 U.S.C. § 4243(e), another judge of this district held that the *Heck* bar applies "to actions by federal prisoners that implicate the validity of civil commitment proceedings."[15] As to Allen's claims challenging and arising from the civil-commitment proceeding, the *Heck* rule bars his claims for declaratory and injunctive relief. Plaintiff remains committed and has not shown that such commitment has been invalidated by a state or federal court. As a result, Plaintiff's claims arising from the commitment proceedings are not cognizable under § 1983, and must be

---

committed detainees's lawsuit that challenges the legality of his commitment because "a favorable outcome would necessarily imply the invalidity of his confinement"), *cert. den'd*, 547 U.S. 1183 (2006) ; *Huftile v. Miccio-Fonseca,* 410 F.3d 1136, 1139-40 (9th Cir. 2005)(holding that *Heck* applies to civilly committed detainees who are confined under California's Sexually Violent Predators Act), *cert. den'd*, 547 U.S. 1166 (2006); *Haynesworth* v. *Cothran*, C/A No. 2:12-2466-CMC-BHH, 2012 WL 4753896, at *2 (D.S.C. Sep. 27, 2012)(*Heck* applies to civil-rights challenges to SVP orders), *rep. and rec. adopted*, 2012 WL 4753893 (Oct. 4, 2012); *Talbot v. Loya,* No.4:03cv2400, 2005 WL 2765131 at *2 (D. Neb. 2005)("[t]he principles and objectives expressed in *Heck v. Humphrey* apply as well to a person subject to an involuntary civil commitment as to a convicted prisoner serving a sentence")(citation omitted); *Nelson* v. *Suire*, No.4:09CV658 DDN, 2009 WL 1161609 at *2 (E.D. Mo. 2009)("*Heck* applies where a civil detainee challenges an SVP determination in a suit for damages.")

[15]*Ruston v. Dallas County, Texas, et al.,* No.3:07-CV-1076-D, 2008 WL 958076, at *4-5 (N.D.Tex. April 9, 2008), *appeal dism'd*, 320 Fed. Appx. 262 (5th Cir.), *cert. dism'd*, 130 S.Ct. 267 (U.S. 2009)(citing *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994))(Fitzwater, J).

dismissed.[16]

*Conditions of Civil Commitment*

Allen complains that in each facility in which he has been detained under the authority of OVSOM, he has been required to sign agreements to abide by conditions including being subjected to a polygraph test relating to his compliance with those rules. He complains that a refusal to take or failure to pass the polygraph could result in being charged with a felony. (Compl. ¶ 14, 17.) He also contends that the use of a forced polygraph to charge him with a felony for violating the conditions of his commitment would amount to a violation of his Fifth Amendment right not to be compelled to be a witness against himself. (Compl. ¶ 27.) Allen also complains that he is subjected to having to wear a GPS tracking device, contending that the requiring of its use is a violation of his liberty and a violation of the "Universal Declaration of Human Rights." (Compl. ¶ 28.) Allen complains of being denied access to unapproved contact with friends and family, and contends that such limitation denies his "right of association." (Compl. ¶¶ 16, 29.) Plaintiff also complains that he only receives mail once a week and contends that although he has sent letters to government and other entities, he has not received responses, and he contends a packet sent to him by an attorney was never received. (Compl. ¶ 20.) Allen also contends that he has no law library access and no income to

---

[16]*See Heck*, 512 U.S. at 487-88; *see generally Walston v. State Counsel for Offenders,* No.H-07-2120, 2010 WL 3056657, at *2 (S.D. Tex. July 30, 2010) (holding that claims under § 1983 by individual committed under Texas SVP scheme are barred by *Heck).*

hire a lawyer, such that he is being denied his right of access to the courts. (Compl. ¶ 30.) Allen also complains that because the rules of the civil-commitment program are more punitive than confinement for a criminal offense, the civil-commitment provisions of Texas law subject him to a violation of his constitutional rights not to be subjected to double jeopardy and not be subjected to an ex-post-facto violation. (Compl. ¶ 31.)

First, the Court observes that similar programs and the state laws that create such programs have been repeatedly upheld by the Supreme Court of the United States, which has recognized the constitutionality of civil-commitment programs for sex offenders and the protection of the public from such offenders.[17] Furthermore, Allen's claim that he could be subject to prosecution for breaking the rules of his civil commitment and treatment plan does not state a constitutional violation.[18] Texas courts have upheld Texas's provisions for civil commitment of sexually violent predators, and the Court does not differ with them.[19] The Court will now consider each of Allen's specific claims.

---

[17]See *United States v. Comstock,* 130 S.Ct. 1949 (2010); *Kansas v. Crane,* 534 U.S. 407 (2002); *Seling v. Young*, 531 U.S. 250 (2001); *Kansas v. Hendricks,* 521 U.S. 346 (1997).

[18]*See Wilson v. Thaler,* No.H-12-927, 2012 WL 3727133, at *5 (S.D. Tex. Aug. 27, 2012)(reviewing inmate's challenge to conviction for violating the terms of civil commitment and rejecting his claim that such prosecution for breaking the rules of commitment was a constitutional violation).

[19]*See In re Commitment of Fisher,* 164 S.W. 3d 637 (Tex. 2005); *see also In re Commitment of Shaw,* 117 S.W. 3d 520, 522 (Tex. App.-Beaumont 2003, pet. ref'd)(rejecting claim that "Texas SVP statutory scheme is unconstitutional because it is punitive in nature and violates basic constitutional safeguards")(citing *Beasely v. Molett,* 95 S.W. 3d 590, 607-08 (Tex. App.-Beaumont 2002, pet. ref'd and rehearing den'd); and *In re the Commitment of Mullens,* 92 S.W. 3d 881, 883-84 (Tex.App.-Beaumont 2002, pet. ref'd).

*Polygraph Examination*

Allen contends that the requirement that he subject himself to a polygraph regarding his compliance with the rules of his civil commitment will result in a violation of his Fifth Amendment right not be a witness against himself. Article III of the Constitution limits federal courts to adjudicating actual cases or controversies.[20] "In order to give meaning to Article III's 'case or controversy requirement,' the courts have developed 'justiciability doctrines,' such as the 'ripeness' doctrine. Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review.'"[21] The Court must apply the ripeness doctrine to deem this claim premature. Allen does not allege that he has yet had to take a polygraph examination, much less that the results of any polygraph have been used against him. Thus, Allen's claims relating to a polygraph examination must be dismissed.

*Requirement of a GPS Tracking Device*

Allen also challenges the imposition of a condition requiring him to wear a GPS tracking device. This condition is expressly listed in the SVP statutory scheme in § 841.082(a)(5)(A) of the Texas Health and Safety Code. This Court finds persuasive the analysis of a similar claim by the Texas Court of Appeals:

Shaw further contends that the requirement of a tracking

---

[20]*United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000).

[21]*Osayande v. I.N.S.,* 66 Fed. Appx. 525, 2003 WL 21017484, at *1 (5th Cir. April 16, 2003)(citing *Foster,* 205 F.3d at 857)).

device in section 841.082(5) serves both a punitive and deterrent function. Citing a Court of Criminal Appeals case which holds that electronic monitoring is an unreasonable condition of deferred adjudication probation, Shaw argues that if electronic monitoring is too harsh a punishment for a probationer who has not been convicted of a crime, how much more punitive must it be for someone who is civilly committed? *See Ex parte Gingell,* 842 S.W. 2d 384, 285 (Tex. Crim. App. 1992). As we noted in *Beasley,* the "restraints [in section 841.082] in the context of involuntary civil commitments have historically been treated as civil, not punitive."95 S.W. 3d at 607 (citing *Kansas v. Hendricks,* 521 U.S. 521 U.S. 346, 363 (1997)). Further, as pointed out in *Hendricks,* the "State may take measures to restrict the freedom of the dangerously mentally ill. This is a legitimate nonpunitive governmental objective and has been historically so regarded." *Hendricks,* 521 U.S. at 363. Even though the person committed under the Kansas statute is subject to in-patient confinement, the Supreme Court found the statute non-punitive. *Id.* Here, the person civilly committed is treated on an out-patient basis and monitored by a tracking device that will "track his location." *See* §§ 841.002(10),841.082(a)(5). The employment of the device to track the whereabouts of a sexually violent predator who is on out-patient treatment satisfies a legitimate nonpunitive government objective of protecting society from what the Legislature has termed "the risk of repeated predatory behavior." *See* § 841.001.[22]

For the reasons explained by the state court, Allen's challenge to the condition of having to wear a tracking device is dismissed.

*Limits on Visitation--Freedom of Association*

Allen complains of a "complete ban on any unapproved" contact with his friends and family, and alleges that this practice results in an infringement of his right of association. Allen acknowledges that he was allowed contacts that were program related and that he was allowed contact with his grandmother. (Compl. ¶¶ 16,29.) In

---

[22]*See In re Commitment of Shaw,* 117 S.W. 3d 520, 523-34 (Tex. App.-Beaumont 2003,pet. ref'd).

*Overton v. Bazzetta,*[23] the Supreme Court upheld, against a constitu-

tional challenge, several regulations adopted by the Michigan

Department of Correction limiting prison visitation. Although the

Court noted that prior cases outside the prison context recognized

a right of association between family members, the Court explained:

> This is not an appropriate case for further elaboration
> of those matters. The very object of imprisonment is
> confinement. Many of the liberties and privileges enjoyed
> by other citizens must be surrendered by the prisoner. An
> inmate does not retain rights inconsistent with proper
> incarceration. *See Jones v. North Carolina Prisoners'
> Labor Union, Inc.,* 433 U.S. 119 (1977); *Shaw v. Murphy,*
> 532 U.S. 223 (2001). And, as our cases have established,
> freedom of association is among the rights least compati-
> ble with incarceration. *See Jones, supra,* at 125-26;
> *Hewitt v. Helms,* 459 U.S. 460 (1983). Some curtailment of
> that freedom must be expected in the prison context.[24]

Instead, the Supreme SCourt focused not on whether such a right of

association survived to prisoners, but only whether the regulation

limiting the visitation rights bore a rational relation to

legitimate penological interests.[25] In *Seling v. Young,* the Court

recognized that "due process requires that the conditions and

duration of confinement under [Washington's Sexually Violent

Predator Act] bear some reasonable relation to the purpose for which

persons are committed."[26] Thus, the applicable standard of review

is whether the restrictions on visitation are reasonably or

---

[23]539 U.S. 126 (2003).

[24]*Id.,* at 131.

[25]*Id.,* at 132 (citing *Turner v. Safley,* 482 U.S. 78 (1987)).

[26]*Seling v. Young,* 531 U.S. at 265(citations omitted).

rationally related to the purposes for which Allen was committed.[27]

Allen complains that he is not allowed "unapproved contact" with family and friends. He does not contend that he has no access to an opportunity to meet with family, and acknowledges he has been allowed to meet with his grandmother. The Texas SVP act mandates the imposition of "requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community," including "prohibiting the person's contact with a victim or potential victim of the person."[28] A requirement that Allen obtain approval of the right to have visitation is consistent with and rationally related to these purposes. His claim based upon a limitation on visitation is dismissed.[29]

*Access to Court*

Allen also claims a violation of the constitutional right of access to court because he lacks access to a law library and has insufficient monies to hire a lawyer. Although such a right exists, Allen has no such claim on the facts before this Court. The Supreme

---

[27]One court has determined that a sexually violent predator's claims are governed by the "professional judgment" standard enunciated in *Youngberg v. Romeo,* 457 U.S. 307 (1982). *See Lieberman v. Budz,* No. 03 C 2009, 2007 WL 1810493, at *13 (N.D. Ill. June 19, 2007). In *Youngberg,* the Supreme Court held that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement that criminals whose conditions of confinement are designed to punish." *Youngberg,* 457 U.S. at 322. The Supreme Court also noted that "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests," which the Court determined requires a determination only of whether professional judgment was exercised: "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices could have been made." *Id.,* at 321.

[28]Tex. Health and Safety Code § 841.082(a) and (a)(2)(West Supp. 2012).

[29]*See generally Lieberman v. Budz,* 2007 WL 1810493, at *14 (rejecting a challenge to restrictions on visitation privileges by one committed as sexually violent predator).

Court, in *Bounds v. Smith,*[30] recognized a fundamental constitutional right of access to the courts, but has since clarified the scope of a prisoner's right of access to the courts and found that a prisoner must allege an actual injury to support a claim for a violation of such right.[31] Although not a prisoner, given Allen's detention and restriction to the complained-of facilities, to establish an actual injury Allen must set forth that the complained-of action hindered his efforts to pursue a legal claim.[32]  Allen has not asserted any hindrance to any legal actions to which he is a party. Although he alleges he was delayed in filing this suit, he does not contend he was unable to file suit nor does he claim that he has been unable to pursue other claims. As Allen has not alleged that he suffered any actual injury, he has not stated any claim of violation of the

---

[30]*See Bounds v. Smith,* 430 U.S. 817, 828 (1977)(recognizing prisoners' constitutional right of access to courts); *see generally Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741 (1983)("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir. 1993)("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses")(quoting *Chrissy F. v. Mississippi Dept. Of Public Welfare,* 925 F.2d 844, 851 (5th Cir. 1991)).

[31]*Lewis v. Casey,* 518 U.S. 343, 351 (1996)

(Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense  . . . [t]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.)

[32]*See Chriceol v. Phillips,* 169 F.3d 313, 317 (5th Cir. 1999)(inmate alleging denial of access to courts must demonstrate actual injury), *citing Ruiz v. United States,* 160 F.3d 273,275 (5th Cir. 1998)(holding that without proof of actual injury a prisoner cannot prevail on an access-to-the-courts claim); *see also McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (noting that such a plaintiff must show prejudice to his position as a litigant)(citations omitted).

constitutional right of access to courts.

*Interference with Mail*

Relatedly, Allen complains of the limitation of his receipt of both regular and legal mail. The Court does not find that the Fifth Circuit has set forth a standard to analyze the restriction or censorship of mail in the civil-commitment context. In the prisoner context, like a violation of the right of access to court, in order to support a claim for interference with the right to free speech based on the handling of legal mail, a claimant must do more than allege simply that his legal mail was opened and inspected outside of his presence.[33] The United States Court of Appeals for the Fifth Circuit has explained that "[t]he opening of incoming legal mail outside an inmate's presence for the purpose of inspecting for contraband does not violate a prisoner's constitutional rights."[34] The Court assumes these same standards are applicable to Allen's claims of interference with mail.[35] Other than complaining that a particular package was not received from an attorney, Allen has set

---

[33]*See Walker v. Navarro County Jail,* 4 F.3d 410, 413 (5th Cir. 1993)(allegation that incoming mail was opened and read, but not censored, did not state a constitutional violation); *Brewer v. Wilkinson,* 3 F.3d 816, 824 (5th Cir. 1993)(noting that allegations that mail was opened and inspected outside inmates presence [and in violation of prison regulation], without additional allegation that such practice affected the inmates ability to prepare or transmit a document, or allegation that the mail had been "censored," did not state a cognizable constitutional claim)(citing *Thornburgh v. Abbott*, 490 U.S. 401, 410 (1989) and *Turner v. Safley,* 482 U.S. 78, 87 (1987)).

[34]*Clemons v. Monroe,* 2011 WL 1497074, 423 Fed. Appx. 362, 364 (5th Cir. April 18, 2011)(citing *Brewer,* 3 F.3d at 825), *cert. den'd,* 132 S.Ct. 764 (2012).

[35]*See generally Ahlers v. Rabinowitz,* 684 F.3d 53, 64-65 (2d Cir. 2012)(adapting the formulas for review of prisoner challenges to mail interference to the context of a challenge from one suffering from a civil commitment), *cert. den'd,* 133 S.Ct. 466 (2012).

forth no claim that interference with either his regular or legal mail interfered with, delayed, or hampered his access to court, nor has he alleged that any particular defendant censored any incoming communication.[36] As Allen articulates no claim of harm resulting from any of the allegations related to the handling of his mail, this claim must be dismissed.

*Double Jeopardy and Ex Post Facto*

Allen's contention that the Texas civil-commitment program, enacted after the Supreme Court's decision upholding Kansas's Sexually Violent Predator Act against double jeopardy and ex-post-facto claims, is rejected for the same reasons the Court upheld the Kansas law.[37]

*Order*

---

[36]*See generally Wolff v. McDonnell,* 418 U.S. 539, 575-76 (1999)(noting in the context of prison officials' review of legal mail "that freedom from censorship was not the equivalent of freedom from inspection or perusal.")

[37]*Kansas v. Hendricks,* 521 U.S. at 360-61 ("We granted Hendricks's cross-petition to determine whether the Act violates the Constitutions's double jeopardy prohibition or its ban on *ex post facto* lawmaking. The thrust of Hendricks's argument is that the Act establishes criminal proceedings; hence confinement under it necessarily constitutes punishment. He contends that where as here, newly enacted "punishment" is predicated upon past conduct for which he has already been convicted and forced to serve a prison sentence, the Constitution's Double Jeopardy and *Ex Post Facto* Clauses are violated. We are unpersuaded by Hendricks's argument that Kansas has established criminal proceedings.")

All of plaintiff Nathaniel Allen's claims arising from and challenging the civil-commitment proceedings are DISMISSED WITH PREJUDICE to their being asserted again until the *Heck v. Humphrey* conditions are met,[38] under authority of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

All of Allen's remaining claims are DISMISSED WITH PREJUDICE under authority of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

SINGED January 30, 2013.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[38] *See Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir. 1996).